In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2381

ANGEL COMBS,

*Plaintiff-Appellant*,

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:21-cv-00328 — **William C. Lee**, *Judge*.

———————————

ARGUED MARCH 31, 2023 — DECIDED MAY 30, 2023

———————————

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Angel Combs filed for disability benefits on August 2, 2019. An Administrative Law Judge ("ALJ") considered her claim and determined that Ms. Combs was not disabled at any time since the alleged onset of disability. On review, the district court concluded the ALJ's determination was supported by substantial evidence.

In this court, Ms. Combs maintains that the ALJ should have concluded that she suffered a closed period of disability from June 2019 to July 2020. Nevertheless, the record amply supports the ALJ's conclusion that Ms. Combs was not disabled at any time, including during this period. We therefore affirm the judgment of the district court.

## I.

## BACKGROUND

### A.

The evidence in the administrative record reveals that Ms. Combs suffers from several physical and mental impairments including lumbar spondylosis, diabetes, and migraines. She sought treatment for lower back pain in March 2018 at PPG Pain Management Clinic ("PPG"), where she received an epidural steroid injection. Due to a loss of insurance, she did not return to PPG until May 2019, when she sought treatment for radiating lower back pain. She reported that her pain was aggravated by standing in one spot and mitigated by lying down. The pain did not disturb her sleep. Dr. Kenneth Austin's notes of that visit indicate that Ms. Combs's straight-leg test was positive for radicular pain on the right side; she also had pain with flexion at her hips, tenderness in her lower back, and an antalgic gait. He also noted that Ms. Combs had normal ranges of motion, normal sensation, normal reflexes, and full strength. He replaced her Tizanidine (a muscle relaxant) with Gabapentin (for nerve pain) and refilled her Diclofenac (an anti-inflammatory). He scheduled her for a right medial branch block, encouraged daily low-impact exercise, and referred her to physical therapy and nutrition services.

Ms. Combs returned to PPG on June 19, 2019. She reported improvement with Gabapentin and Diclofenac without side effects. She was no longer going to physical therapy. Dr. Austin observed that Ms. Combs had an antalgic gait and tenderness to the touch in the lower back, but her straight-leg test was negative for radicular pain. Although Dr. Austin's treatment notes from that visit state the "professional judgement that this patient's diagnosis requires narcotic therapy for their management of pain for greater than 7 days," Ms. Combs was not prescribed narcotic pain medication.[1] She was scheduled for a medial branch block later that month.

On June 28, 2019, Ms. Combs received a right medial branch block at the L3 level of her lumbar spine. The administration of the branch block took ten minutes with no complications. Two weeks later, Ms. Combs returned to PPG and reported that the branch block provided one hundred percent relief for three days.[2] She stated that she was not experiencing any side effects from her medications, Gabapentin and Diclofenac. Her physical exam revealed a normal range of motion without pain. Her treatment plan included a second medial branch block and a follow-up appointment in three months. Her medications were not changed.

Ms. Combs received a second right medial branch block on July 26, 2019. The administration of the branch block took ten minutes with no complications. At her follow-up appointment, Ms. Combs indicated that the branch block gave her ninety-five percent pain relief for four days. Nurse

---

[1] A.R. 367.

[2] *Id.* at 347.

Practitioner Sheila Barlow observed that Ms. Combs was again tender to the touch on her lower back, but had a normal range of motion without pain reproduction, as well as normal strength, sensation, and gait. Ms. Combs was continued on the same dosage of Gabapentin and Diclofenac; she also was counseled about the importance of activity modification, dietary changes, and tobacco cessation.[3]

On November 5, 2019, Ms. Combs saw Dr. Gianna Casini at PPG. Dr. Casini observed that Ms. Combs was again tender to the touch on her lower back, but otherwise had a normal examination. She performed a right L3-sacral radiofrequency ablation, a procedure in which radio waves are sent through a needle to heat an area of the nerve and prevent it from sending pain signals to the brain. The procedure took twenty minutes.

On December 4, 2019, Ms. Combs returned to PPG for a follow-up appointment. Ms. Combs indicated that the radiofrequency ablation performed one month earlier had given her eighty percent pain relief to date. Ms. Combs's examination was the same as it had been at the last appointment, and her medications remained the same.[4]

On December 31, 2019, Dr. Casini administered a left L3-sacral medial branch block. The procedure took nine minutes. At her follow-up appointment, Ms. Combs reported that the

---

[3] The notes from an October 2019 appointment addressing Ms. Combs's diabetes state that Ms. Combs was negative for "arthralgias, back pain and joint swelling." *Id.* at 646.

[4] In December 2019, Ms. Combs's counseling notes stated that Ms. Combs had a normal gait and normal strength.

branch block gave her eighty percent relief lasting two days. Ms. Combs's medications remained the same, and she again was counseled on the importance of activity modification and dietary changes.[5]

On March 10, 2020, Ms. Combs saw Dr. Casini, who administered a left medial branch block. The procedure lasted ten minutes. At a follow-up appointment a week later, Ms. Combs reported that the branch block had given her ninety percent relief for four days. Ms. Combs's examination revealed a "[n]ormal range of motion without pain reproduction," and she was continued on the same medications and dosages.[6]

In June 2020, Ms. Combs saw Nurse Practitioner Barlow. Ms. Combs's physical exam was unchanged, and she was continued on the same medications and dosages. The treatment notes indicate that Ms. Combs would be scheduled for a left radiofrequency ablation as soon as COVID protocols were eased.

On July 14, 2020, Dr. Casini performed a left sacral radiofrequency neurotomy (another name for radiofrequency ablation) on Ms. Combs; the procedure took twenty minutes.[7] Two months later, Ms. Combs reported to Nurse Practitioner

---

[5] On January 20, 2020, Ms. Combs attended a counseling session in which she reported that she "cleans and keeps the inside of the house maintained." *Id.* at 914.

[6] *Id.* at 729–30.

[7] At a counseling session on August 17, 2020, Ms. Combs related that she was still having "quite a bit of pain" in her back that was making it difficult to do chores like vacuuming and sweeping. *Id.* at 894.

Barlow that the procedure had provided ten percent relief to date. Her physical exam revealed a normal gait and "[n]ormal range of motion with minimal pain reproduction," but she was experiencing some "[p]ain radiation down right hip to feet."[8] Nurse Practitioner Barlow recommended that she get an x-ray of her lower back before her next appointment. Regarding her medications, Ms. Combs stayed on the same dosages of Diclofenac and Gabapentin; she had not been taking her Gabapentin for a month because she thought she was out of refills. Ms. Combs was not prescribed any narcotic pain medication.[9]

On December 10, 2020, Ms. Combs had an appointment with Nurse Practitioner Barlow in which she reported that her pain was approximately a four out of ten. Her straight leg test was "negative to radicular pain," and she had a normal range of motion and gait.[10] Her medications were unchanged, and a follow-up appointment was scheduled in eight weeks.

**B.**

Ms. Combs applied for Disability Insurance Benefits on August 2, 2019, alleging an onset of disability of December 24, 2015. The claim was denied initially and upon reconsideration.

---

[8] *Id.* at 707.

[9] On October 12, 2020, Ms. Combs had a telephonic counseling session in which she reported that she was watching her granddaughter while her daughter attended college.

[10] *Id.* at 700.

Ms. Combs filed a request for a hearing, and a telephonic hearing was held before an ALJ on March 26, 2021. At the hearing, Ms. Combs testified that her back pain prevented her from standing in one spot for more than ten minutes at a time before she had to sit down. The various interventions—injections and nerve blocks—had not brought her any relief. She further testified that there were days that her back was "worse," to the point that she could "barely move" and had to have someone "help [her] physically out of [her] bed" because she felt "paralyzed."[11]

The ALJ issued an unfavorable decision. The ALJ found that Ms. Combs had the following severe impairments:

> lumbar spondylosis, asthma, migraines/headaches, chronic pain syndrome, diabetes with diabetic polyneuropathy, obesity, attention deficit hyperactivity disorder, schizoaffective disorder, bipolar type, posttraumatic stress disorder, social anxiety disorder, generalized anxiety disorder, and borderline personality disorder.[12]

However, the ALJ continued, Ms. Combs's statements related to "the intensity, persistence and limiting effects of the[] symptoms" of these impairments were "not entirely consistent with the medical evidence and other evidence in the record."[13] Thus, the ALJ concluded that Ms. Combs had the residual function to

---

[11] *Id.* at 44.

[12] *Id.* at 17.

[13] *Id.* at 21.

perform light work … except that the claimant can occasionally climb ramps and stairs, she can never climb ladders, ropes, scaffolds, she can occasionally balance, stoop, kneel, crouch, and crawl, and she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, wet, slippery or uneven surfaces, and unguarded moving machinery. In addition, the claimant can understand, remember, and carry out simple instructions and tasks, … make judgments related to simple decisions, … respond appropriately to brief interactions with coworkers and supervisors[.] [S]he should avoid work activity performed in tandem with others, she should avoid work activity requiring interactions with the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting.[14]

The ALJ also determined that, even with these limitations, there were jobs in the national economy, in significant numbers, that Ms. Combs could perform. The ALJ thus found that Ms. Combs "was not under a disability, … at any time from

---

[14] *Id.* at 20 (emphasis removed).

December 24, 2015,[15] the alleged onset date, through December 31, 2020, the date last insured."[16]

## C.

Ms. Combs brought this action in district court. She maintained that the ALJ "erred in not finding a closed period of disability from at least February 21, 2018 to a reasonable time of healing after July 14, 2020 due to her back impairment, her pain, and her multiple invasive procedures that would have rendered her off task or absent beyond employer tolerances."[17] The district court disagreed. It noted that the ALJ's determination included a detailed discussion of Ms. Combs's treatment history and physical examination findings throughout the relevant period. These revealed that, during the relevant period, Ms. Combs underwent several injections and procedures for back pain, which provided her with some relief. Moreover, her physical exams during this time revealed normal strength and range of motion. In short, the ALJ had considered all of the evidence and had reasonably

---

[15] Although the ALJ references Ms. Combs's onset date, the ALJ only considered evidence from October 2018 forward. This is because Ms. Combs had pursued other disability claims through the administrative process, and those claims had ended in adverse administrative findings that were not appealed. Thus, at the outset of Ms. Combs's hearing in this action, the ALJ clarified that the earliest date that Ms. Combs could be found to be disabled was "the date following the prior hearing decision," which was sometime in October 2018. *Id.* at 36.

[16] *Id.* at 26 (emphasis removed).

[17] R.25 at 4–5.

concluded that Ms. Combs was capable of light work that accommodated her documented limitations.

Ms. Combs timely appealed.

## II.

## DISCUSSION

"We review de novo the district court's affirmance of the ALJ's decision and review directly the decision of the ALJ." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). We will affirm the ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[S]ubstantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). If reasonable minds could disagree on whether a claimant is disabled based on the evidence, a reviewing court must affirm the agency's decision to deny benefits. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

An individual is entitled to disability benefits if the person is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Thus, a disability for a continuous period of twelve or more months entitles a person to benefits for that period of time. The burden is on the claimant to establish disability. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

**A.**

Ms. Combs now maintains that the ALJ's determination is not supported by substantial evidence because it failed to recognize a closed period of disability between June 2019 and July 2020. Specifically, Ms. Combs faults the ALJ for failing to acknowledge that her back pain was at its worst during this period as evidenced by the numerous procedures that she underwent. Second, the ALJ's decision was deficient because it failed to discuss the medial branch blocks in December 2019 and March 2020. Finally, Ms. Combs submits, the ALJ did not consider the excessive number of absences Ms. Combs would have incurred during the relevant period. We consider each of these.

Turning to Ms. Combs's first contention, she maintains that the record establishes a closed period of disability from June 2019 to July 2020 because, "[d]uring this fourteen-month period, [she] had six spinal procedures done, of increasing severity."[18] Ms. Combs's characterization of her spinal procedures is not supported by the record. Ms. Combs received the same procedure—a medial branch block—on four occasions: June 2019 (right side), July 2019 (right side), December 2019 (left side), and March 2020 (left side). None of these procedures took longer than ten minutes. She also had two ablation procedures: November 2019 (right side) and July 2020 (left side). Neither of these procedures took more than twenty minutes. This treatment regimen, without further clinical elaboration, does not establish that the treatments were of increasing severity or indicate a disabling condition.

---

[18] Appellant's Br. 15.

Additionally, although Ms. Combs maintains that the frequency of her treatments is evidence that her back condition "was at its worse [sic] from June 2019 through July 2020,"[19] her hearing testimony did not distinguish the pain she endured before, during, or after the relevant period. Ms. Combs stated that she had been suffering debilitating back pain at least since 2018, and that the "injections" and procedures that "burnt the nerves" did not bring her relief.[20] According to Ms. Combs, at the time of the hearing, she still was experiencing days where her back was "awful," she could "barely move," and it felt as if she were "paralyzed almost."[21] Thus, Ms. Combs's testimony undermines her argument that her back condition clearly was worse during the proposed closed period.

Ms. Combs's second contention—that the ALJ failed to mention, and therefore must have ignored, relevant evidence—is also unpersuasive. Although the ALJ may not ignore "an entire line of evidence that supports a finding of disability," *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010), the

---

[19] *Id.*

[20] *See* A.R. 38–40. This testimony is in tension with the contemporaneous statements that Ms. Combs made to her medical providers. At the time she underwent these procedures, she reported experiencing between ten and one hundred percent pain relief that lasted between a few days and a few months. *See, e.g., id.* at 347, 702, 724, 748, 775. The ALJ's decision took note of these discrepancies, stating that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 21.

[21] *Id.* at 44.

ALJ is not required to mention every piece of evidence, *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). Here, the ALJ did not mention the medial branch blocks that took place in December 2019 and March 2020. However, the ALJ mentioned the two other medial blocks as well as the ablation procedures. The evidence recited by the ALJ shows an understanding that Ms. Combs was undergoing multiple and different procedures for pain relief on both the left and right side of her back. Thus, the ALJ did not ignore an entire line of evidence that would have supported a finding of disability.

Ms. Combs lastly submits that the ALJ should have considered the amount of time that she would have missed work between June 2019 and July 2020. Ms. Combs estimates that she would have missed fourteen and one-half days of work during this period due to her multiple procedures and appointments. Ms. Combs submits that this number of absences would have been unacceptable to any employer and therefore rendered her unemployable during this period.[22]

There is no evidence in the record to support the time estimates that Ms. Combs employs. By way of example, Ms. Combs assigns one day off work for each of the medial branch blocks. However, the record shows that each of these lasted only ten minutes. Given that one of these procedures took place at 3:30 p.m., it is difficult to see how this would have necessitated a full day off work. *See Barnett v. Apfel*, 231

---

[22] The Commissioner maintains that this argument was forfeited because it was not made before the district court. *See* Appellee's Br. 24. Although the argument before the district court was paltry, the district court nevertheless recognized the argument and addressed it. *See* R.25 at 5. Therefore, it has not been forfeited.

F.3d 687, 691 (10th Cir. 2000) (rejecting argument that the ALJ should have "consider[ed] plaintiff's absenteeism" when "plaintiff's … extrapolation of how many days she [would] have missed from work … assume[d] she was required to miss entire days of work for each appointment"). Therefore, Ms. Combs has not met her burden of showing that the additional appointments would have resulted in a level of absenteeism that employers would have found unacceptable.

**B.**

Ms. Combs submits that, even if the record does not compel a finding that she was disabled between June 2019 and July 2020, her case should be remanded because it was incumbent upon the ALJ to address explicitly whether she endured a closed period of disability. Ms. Combs relies upon two cases in support of this contention: *Reed v. Colvin*, 656 F. App'x 781 (7th Cir. 2016), and *Jackson v. Astrue*, No. 09 C 50028, 2010 WL 4793309 (N.D. Ill. Nov. 18, 2010). Neither case is helpful to Ms. Combs.

In *Reed*, the claimant was injured in a car accident and underwent surgery. Her application for disability benefits was denied, and she maintained that the ALJ had not "adequately explain[ed] why she did not satisfy the standard for disability for at least the 12 months following the accident." *Id.* at 788. We upheld the ALJ's determination even though the ALJ had "not separately explain[ed] the basis for concluding that Reed was not disabled for at least the 12 months after the accident." *Id.* We noted that "[t]he ALJ's discussion of the medical evidence from that period makes evident her conclusion that Reed's injuries had healed and ceased to prevent a return to work long before the one-year anniversary of the accident." *Id.*

Here, as in *Reed*, the ALJ discussed the medical records from the proposed period of disability. Those records reveal largely normal physical evaluations, no prescriptions for narcotics,[23] and minor procedures to relieve back pain. The ALJ's recitation makes it evident that the ALJ did not believe that Ms. Combs was disabled during this time.

*Jackson* presents a scenario different from that in *Reed* and the present case. *Jackson* involved a claimant who slipped and fell in July 2004, necessitating ankle surgery. In February 2005, while still healing from the ankle surgery, she developed "a large disc herniation," and a microdiskectomy was performed in May 2005. *Jackson*, 2010 WL 4793309, at *14. The following month, while recovering from her back surgery, the claimant was hospitalized for deep vein thrombosis. Despite these repeated, serious incidents over a twelve-month period, the ALJ had "not ma[d]e clear during Claimant's hearing or in his decision that he considered the possibility of a closed period of disability around the times Claimant underwent her surgeries." *Id.* Consequently, the district court remanded the case to the ALJ.

Here, unlike in *Jackson*, there was no clear evidence of serious, repeated medical interventions over a defined period of time that should have alerted the ALJ to consider a closed period of disability. There were no falls, trips to the emergency room, surgeries, or hospitalizations that would have

---

[23] The notes from several of Ms. Combs's appointments contain the following statement: "It is our professional judgment that this patient's diagnosis requires narcotic therapy for their management of pain for greater than 7 days." *See, e.g.*, A.R. 367. Nevertheless, Ms. Combs was not prescribed narcotics for pain.

apprised the ALJ that Ms. Combs's back pain was becoming more serious.

Moreover, Ms. Combs has struggled to identify consistent dates to bookend the proposed closed period. In the district court, Ms. Combs argued that the ALJ "erred in not finding a closed period of disability from at least February 21, 2018 to a reasonable time of healing after July 14, 2020."[24] In this court, however, the proposed closed period is June 2019 to July 2020.[25] We cannot fault the ALJ for failing to consider a closed period that Ms. Combs herself has had difficulty identifying.

## Conclusion

The record supports the ALJ's determination that Ms. Combs was not disabled during a closed period between June 2019 and July 2020. We therefore affirm the judgment of the district court.

AFFIRMED

---

[24] R.21 at 10.

[25] *See* Appellant's Br. 15.