[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-11728

Non-Argument Calendar

_____

AFAF MALAK,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-00667-SPF

_____

Before NEWSOM, GRANT, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Plaintiff-Appellant Afaf Beshay Malak appeals the district court's order affirming the Commissioner of the Social Security Administration's (Commissioner) denial of her claim for disability insurance benefits (DIB). She argues that the Administrative Law Judge (ALJ) failed to consider the type; dosage; and side effects, including absenteeism; of her ketamine infusion therapy; epidural steroid injections; and medial branch blocks. After careful review, we affirm.

## I.    Background

In 2021, Malak applied for DIB, alleging an onset date of July 15, 2020, for these disabilities: pinched nerve in back and neck, osteoarthritis in knee, fibromyalgia, sciatic nerve, and chronic headaches/migraines. Disability examiners denied Malak's application initially and on reconsideration. Malak then requested and received an administrative hearing before an ALJ.

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in "substantial gainful activity," she is not disabled. *Id.* § 404.1520(b). Second, if a claimant does not have an "impairment or combination of impairments" that significantly limits her

---

[1] If the ALJ determines that the claimant is or is not disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

physical or mental ability to perform basic work activities, she does not have a severe impairment and is not disabled. *Id.* § 404.1520(c); *see also McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (describing Step Two as a "threshold inquiry," allowing "only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments meet or equal an impairment listed in a provided appendix (the "Listings"), she is disabled. 20 C.F.R. § 404.1520(d); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (the appendix providing the "Listings"). Fourth, if a claimant's impairments do not meet or equal an impairment in the Listings, the ALJ must assess the claimant's Residual Functional Capacity (RFC).[2] 20 C.F.R. § 404.1520(e). Fifth, using the claimant's RFC, the ALJ will determine whether the claimant can still perform "past relevant work." *Id.* § 404.1520(f). If the claimant can do this type of work, she is not disabled. *Id.* If a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing other work that exists in the national economy, she is not disabled. *Id.* § 404.1520(g).

The ALJ issued a decision in September 2020. At step one, the ALJ determined that Malak had not engaged in substantial gainful activity since her alleged onset date.

At step two, the ALJ found Malak possesses the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, degenerative disc

---

[2] A claimant's RFC is the most physical and mental work she can perform despite her limitations. 20 C.F.R. § 404.1545(a)(1).

disease of the cervical spine, degenerative joint disease of the bilateral knees, chronic headache disorder, fibromyalgia, and seronegative rheumatoid arthritis.  The ALJ then found that Malak's other physical impairments—asthma, gastroesophageal reflux disease, insomnia, Baker's cyst of the right knee, renal cysts, hyperlipidemia, hypertension, type II diabetes mellitus, normocytic anemia, leukopenia, and hypothyroidism—were non-severe because there was no record evidence of ongoing functional limitations from these impairments.  The ALJ also found the mental impairments of depression and anxiety, both singly and combined with one another, did not cause more than minimal limitations in her ability to perform basic mental work activities and thus were non-severe.

At step three, the ALJ found that despite Malak's severe impairments, she did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in applicable regulations.

At step four, after considering the record and medical evidence, the ALJ found that Malak had the RFC to perform sedentary work[3] with these caveats:

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

> [Malak] requires the option to sit or stand alternatively every 60 minutes for a brief change in position while remaining on task. She can never climb ladders, ropes or scaffolds, kneel or crawl. She can never balance on slippery, uneven, or erratically moving surfaces. She can occasionally climb ramps or stairs, stoop, crouch, operative foot controls bilaterally, or reach overhead bilaterally. She can never be exposed to unprotected heights or operate dangerous machinery. She can tolerate occasional exposure to extreme cold, extreme heat, industrial vibration, environmental pulmonary irritants such as fumes, odors, dusts and gases, and noise level above the average modern office setting.

In explaining the RFC, the ALJ noted that Malak reported several issues, including persistent headaches, chronic pain that could be at least somewhat managed through medication, fatigue, and that the medication caused her to feel drowsy and unable to drive. The ALJ then explained that Malak's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

As relevant here, Malak received an epidural steroid injection (ESI) for back pain in November 2020. She received additional ESI treatments in January and February 2022. After ESI treatment, Malak was required to apply ice to the injection site every 2 hours

for 24-48 hours.  Along with the ESI treatment, Malak underwent 9 instances of intravenous ketamine infusion therapy over 11 days in August 2021.  In March 2022, Malek underwent another two-day ketamine infusion treatment.  Each ketamine infusion treatment lasted 4 hours, and Malak maintained an indwelling IV catheter between infusions.  In May and August 2022, Malak also received medial branch block (MBB) treatment.  After MBB treatment, Malak was required to apply ice to the injection site every 2 hours for 24-48 hours.  The ALJ noted these treatments in its decision and Malak's positive response to the treatments.

At step five, with the assistance of a vocational expert,[4] the ALJ determined that Malak could perform her past work as a financial institution manager.  The ALJ also determined that Malak can perform jobs existing in significant numbers in the national economy, specifically representative occupations such as disbursement clerk, credit clerk, and gambling cashier.  As a result, the ALJ found Malak not disabled.

Malak then requested that the Appeals Council review the ALJ's decision.  The Appeals Council denied Malak's request,

---

[4] "At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  To make this determination, the ALJ can obtain and rely on "the testimony of a vocational expert."  *Id.*  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

making the ALJ's decision the final decision of the Commissioner. Malak appealed to the district court, and the district court affirmed the ALJ's denial of Malak's DIB. Malak timely appealed.

## II.    Standards of Review

When "an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (alteration adopted). We review a social security disability case to determine whether the Commissioner's decision is supported by substantial evidence. *Id*. at 1313–14. Substantial evidence is relevant evidence, less than a preponderance but greater than a scintilla, that "a reasonable person would accept as adequate to support a conclusion." *Id*. at 1314 (quotation marks omitted). We review de novo the legal principles applied by the Commissioner. *Raper v. Comm'r of Soc. Sec*., 89 F.4th 1261, 1268 (11th Cir. 2024).

## III.    Analysis

Malak argues that the ALJ's determination that she was not disabled was erroneous because the ALJ improperly determined her RFC by (1) failing to include evidence about her medically related absences and (2) failing to consider Malak's subjective complaints. We address each argument in turn.

### a.    Absenteeism

Malak asserts that her RFC failed to include any limitations relating to her medical absences from her treatments despite the

extraordinary number of visits and hospitalizations documented in the record.  She contends that the ketamine infusions made her unable to work more than 12 days during the 12 months from August 2021 to August 2022.  Malak points out that the vocational expert explained that if a person missed more than 1 day a month or 12 days a year, especially starting a new position, that would result in termination.

The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments.  Along with [her] age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(b)-(d).

Social Security regulations and guidance indicate that a claimant's absenteeism should not be considered in crafting the claimant's RFC.  An RFC must be based on medically determinable impairments—not other factors.  *See* 20 C.F.R. § 404.1545.  As the Social Security Administration has explained, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s)." SSR 96-8P, 1996 WL

374184, at *2. Accordingly, factors other than the medically determinable impairments and related symptoms themselves, such as the time needed to attend appointments, are not proper considerations in the RFC assessment.

We reached this conclusion previously in an unpublished opinion, where we addressed a claimant's challenge that her excessive number of medical appointments "rendered her disabled because she would have to be absent too frequently to be employable." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 903 (11th Cir. 2017) (per curiam).[5] The court found Cherkaoui's argument unpersuasive. *Id.* at 904. The court explained that "whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her [RFC] because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Id.* The court then stated that "[t]he number of medical appointments she attended [was] not a functional limitation caused by her impairments that would affect her physical or mental capabilities." *Id.* Finally, the court noted that "nothing in the record indicates that Cherkaoui was required, or would be required, to schedule her

---

[5] In another unpublished case, this court held that "[t]he ALJ's decision not to include absenteeism limitations in Blackmon's RFC is supported by substantial evidence." *Blackmon v. Comm'r of Soc. Sec.*, No. 23-12894, 2024 WL 3495022, at *7 (11th Cir. July 22, 2024) (per curiam). Recently, in another unpublished opinion, this court, citing to *Blackmon* for support, again found the absenteeism argument unpersuasive. *Johnson v. Acting Comm'r of Soc. Sec.*, No. 24-11459, 2025 WL 671262, at *6 (11th Cir. Mar. 3, 2025) (per curiam).

medical appointments during working hours so that they would interfere with her ability to obtain work." *Id.*

Other circuits have addressed a claimant's absenteeism in published decisions and have come to similar conclusions. The Tenth Circuit, for example, held that an ALJ did not err by failing to consider a claimant's absenteeism, considering the claimant made a faulty extrapolation "of how many days she must have missed from work based on her medical record" by "assum[ing] she was required to miss entire days of work for each appointment." *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000). The Seventh Circuit similarly rejected a claimant's absenteeism argument. It held that the claimant had "not met her burden of showing that the additional appointments would have resulted in a level of absenteeism that employers would have found unacceptable" where the record showed that "each of [her appointments] lasted only ten minutes" and that "one of the[ ] procedures took place at 3:30 p.m." *Combs v. Kijakazi*, 69 F.4th 428, 436 (7th Cir. 2023). The Seventh Circuit concluded that "it [was] difficult to see how [her appointments] would have necessitated a full day off work." *Id.*

While we recognize that we are not bound to by our unpublished opinions, 11th Cir. R. 36-2, or decisions from other circuits, we find those decisions persuasive. We hold that a claimant's medical appointments and whether those appointments affect the claimant's ability to work are not appropriate factors for the ALJ to consider when addressing the claimant's RFC. With that, Malak cannot use her previous medical appointments to argue that her

24-11728                Opinion of the Court                11

RFC would have been different had those appointments been considered.[6]  Accordingly, the ALJ properly did not consider Malak's medically related absences when crafting Malak's RFC.

### b.        Subjective Complaints

Even though we reject Malak's argument that many medical appointments affect her RFC and render her disabled, the ALJ must still consider the effects of Malak's treatment alongside the other record evidence.  And Malak argues that the ALJ failed to consider her subjective complaints, specifically the type, dosage, and side effects of Malak's ketamine infusion, ESI, and MBB treatments.  We disagree and find that the ALJ properly considered those treatments.

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  The pain standard requires (1) "evidence of an underlying medical condition," and either (2) "objective medical evidence confirming the severity of the alleged pain" arising from that condition, or (3) a showing "that the objectively determined medical condition" is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Id.*  A claimant's subjective symptoms, such as pain, include the effectiveness

---

[6] Though Malak had 9 appointments in 11 days for her ketamine infusion treatment, Malak does not argue that this would be an ongoing occurrence, and the record does not reflect that Malak would be required to undergo the same treatments each year.

and side effects of any medications or treatment for those symptoms. 20 C.F.R. § 404.1529(c)(3)(iv).  If an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam).

In applying the pain standard, the ALJ noted that while Malak's medically determinable impairments could be reasonably expected to cause the symptoms alleged in her testimony, the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record.  This determination is supported by substantial evidence.  A review of the medical evidence shows that Malak responded to these treatments and did not identify any side effects.  For instance, Malak's report of drowsiness from her medication conflicted with records from the pain management specialist, who stated there were no medication side effects.  Thus, Malak's lack of complaints to her doctors supports the ALJ's determination that side effects from medication did not present a significant problem.

The ALJ also contemplated and properly considered these treatments, as they are reflected in the written opinion where the ALJ discussed Malak's positive response to these treatments.  Thus, substantial evidence supports the ALJ's RFC determination.

## IV.    Conclusion

Although the ALJ is required to consider the effectiveness and side effects of treatments or medication in crafting a claimant's

RFC, the ALJ need not consider the effect of possible absences from work because of medical appointments in determining the claimant's RFC. Because the ALJ adequately considered the effectiveness and side effects of Malak's treatments, the ALJ's RFC determination is supported by substantial evidence.

**AFFIRMED.**