[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13292

Non-Argument Calendar

_____

MELANIE HIGGINS,

Plaintiff-Appellant,

_versus_

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-01425-PDB

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Melanie Higgins appeals the denial of her application for supplemental security income and disability insurance benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). Higgins argues that the administrative law judge erred when evaluating Higgins's testimony regarding her symptoms of fibromyalgia. She also argues that no evidence supported the finding that she would need to be off task up to ten percent of the workday. We affirm.

## I. BACKGROUND

In November 2020, Higgins applied for disability insurance benefits and supplemental security income. In a disability report to the agency, Higgins listed ten medical conditions that limited her ability to work, including scoliosis, seven herniated spinal discs, osteoarthritis, fibromyalgia, degenerative disk disease, sciatica, peripheral neuropathy, migraines, bowel obstruction, and uterine prolapse. She stated that she felt back pain all day, which made it difficult to do any daily chores, care for herself, travel far from home, sit or stand for long periods, or lift much weight.

In June 2017, Higgins saw Dr. Sardha Perera for her back and neck pain. A magnetic resonance imaging report for Higgins's back recorded moderate degenerative disc disease, moderate facet arthrosis and hypertrophy, and mild central spinal stenosis. She continued seeing Dr. Perera through 2018 with continuing pain.

In October 2018, Dr. Rodney Daniel, who worked for Dr. Robert Levin, diagnosed Higgins with fibromyalgia. In July 2019, Higgins received steroid injections, which alleviated her pain. She was also referred to a colorectal surgeon for a rectocele. Higgins saw Dr. Levin through February 2022 and records consistently reported that although Higgins had some trigger point tenderness, she did not appear uncomfortable, had no pain elicited by motion of the joints, had normal motor strength, had intact sensation to light touch, and that her joints appeared normal.

In April 2021, Higgins saw her primary care doctor, Beverly Encarnacion, for back pain, migraines, and gastrointestinal issues. Dr. Encarnacion reported joint pain, but stable range of motion and no neurological findings. Higgins declined surgery.

In June 2021, Higgins went to South Tampa Clinic for back and neck pain. Although she felt pain in her spine from motion, her motor strength was intact. In July 2021, an MRI revealed mild to moderate degenerative disc disease with moderate central canal narrowing and lateral recess narrowing but no central canal stenosis or neural foraminal narrowing. Higgins did not need or want surgery for her neck or back. She also reported right shoulder pain after hiking, but an x-ray at the emergency room was normal.

Higgins saw a pain management specialist and received pain medications and steroid injections. In August and September 2021, she received a medial branch block that relieved her pain by 80 percent. In December 2021, she received a cervical facet injection and reported doing well with 60 percent of her pain relieved.

Higgins also sought medical treatment for a rectocele and rectal prolapse. In July 2019, she saw Dr. James Williams at Tampa General Hospital. Dr. Williams diagnosed Higgins with a rectocele. In August 2019, Dr. Williams reviewed a prior MRI that recorded evidence of rectal prolapse and referred her to a uro-gynecologist, who recommended medication and pelvic floor therapy. In May 2021, Higgins reported that she had more pelvic floor strength with fewer problems. In June 2021, Dr. Williams recorded that he wanted Higgins to have a colonoscopy and a dynamic MRI.

A colonoscopy performed in May 2021 showed internal hemorrhoids, but normal colonic mucosa and no colitis. After the colonoscopy, Higgins went to an emergency room complaining of abdominal pain and diarrhea, the cause of which several colonoscopies could not find. A computerized tomography scan of her abdomen was benign. Higgins later reported that the pain resolved.

In 2021, Dr. Bettye Stanley, a state agency medical consultant, found that Higgins was not disabled and could perform light work. On the agency's reconsideration of the claims, Dr. Bradley Stephan found that Higgins's medical records showed she was not disabled and could perform light work with certain limitations.

Higgins's claims were denied initially and on reconsideration. Higgins requested a hearing before an administrative law judge. At the hearing, Higgins testified that she had severe pelvic floor prolapse after giving birth in 2014 and was diagnosed with fibromyalgia in 2017. She had irritable bowel syndrome such that she had bathroom emergencies "all day, every day." She could not

perform a job that would be done while sitting because her pain kept her in a reclining position. She could only stand, sit, and walk comfortably for about five minutes at a time. She was on medications for pain, migraines, diarrhea, and gastrointestinal distress.

As to her daily activities, she went to church every week, but sitting through the hour-long service was difficult. She did not have trouble brushing her teeth or hair and getting dressed, but she did have trouble showering and doing household chores. While she was able to prepare meals, she had to be in a semi-reclining position while cooking. After driving her daughter to school in the morning, she would spend almost all her time in a reclining position. She would sometimes need to be in the bathroom for half an hour.

The administrative law judge ruled that Higgins was not disabled. The administrative law judge found that Higgins had the severe physical impairments of degenerative disc disease of the lumbar and cervical spine, hypermobility arthralgia, headache disorder, peripheral neuropathy, fibromyalgia, sacroiliitis, and a rectocele, but none of those conditions rose to the level of severity of one of the listed impairments.

The administrative law judge evaluated Higgins's fibromyalgia under Social Security Ruling 12-2p, which provides guidance on deciding whether the claimant has a medically determinable impairment of fibromyalgia. Although Higgins had received a diagnosis of fibromyalgia, she did not meet the disabling criteria for fibromyalgia because the record established that repeated physical examinations showed some trigger point tenderness but no pain

with range of motion. And her motor strength was normal and sensation intact.

The administrative law judge ruled that Higgins had the residual functional capacity to perform light work, as long as she had the option to sit or stand alternatively for a brief change in position every 15-30 minutes while remaining on task, with certain limitations, including, in addition to taking regularly scheduled breaks, being "off-task up to 10% of the time during an 8-hour workday due to [the] possible need for increased restroom usage." After describing Higgins's testimony about her pain and inability to sit, stand, or walk for more than five minutes, the administrative law judge found that her impairments could reasonably be expected to cause the alleged symptoms, but Higgins's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. As to her fibromyalgia symptoms, the administrative law judge found that the MRI established that Higgins did not require surgery and she did not desire surgery; Higgins's hiking contradicted her testimony that she could walk no more than five minutes at one time and spent the majority of the day in a reclining position; Higgins reported doing well after receiving steroid injections and pain medication; she had normal motor strength, muscle bulk and tone, and gait; Dr. Levin and Dr. Daniel reported that Higgins had no pain with range of motion, had normal strength and sensation, and did not appear uncomfortable; and Dr. Encarnacion reported a stable range of motion and unremarkable neurologic findings.

The administrative law judge then explained that, based on the radiological evidence of Higgins's spine, the residual functional capacity limitation to light work with certain postural restrictions was appropriate, even though physical examinations repeatedly showed normal range of motion in all joints, and she did not use an assistive device for ambulation. The administrative law judge explained that the residual functional capacity limitation for her exposure to cold, vibration, and noise along with the sit/stand option, would accommodate pain from Higgins's fibromyalgia or other conditions. As to accommodations for gastrointestinal issues, because Higgins was diagnosed with a rectocele and complained of chronic diarrhea, the administrative law judge added the limitation that Higgins would be off task up to ten percent of the workday.

The administrative law judge also found that Higgins's daily activities showed she was more capable than she alleged because she admitted she attended church on a regular basis, could prepare simple meals and drive, went hiking on at least one occasion, performed personal care independently, and reported that she had significant improvement with her pelvic floor. The administrative law judge found that Higgins had not offered an opinion from a medical source to support her allegations. The administrative law judge found the state agency medical consultants, who found that Higgins could perform light work, to be partially persuasive. The administrative law judge agreed that Higgins could perform a range of light work, but, viewing the evidence in the light most favorable to Higgins, provided greater postural restrictions and additional restroom breaks.

The administrative law judge found that Higgins had no past relevant work to which she could return. The administrative law judge found that an individual with Higgins's residual functional capacity, age, education, and experience could work as a garment sorter or a mail sorter clerk, jobs which existed in significant numbers in the national economy. The Appeals Council denied her request for review.

Higgins sought review in the district court and argued that the administrative law judge erred by placing undue emphasis on the lack of objective medical findings and failing to use the framework of Social Security Ruling 12-2p to evaluate her complaints. She also argued that the administrative law judge's finding that she would be off task ten percent of the workday was not supported by substantial evidence. The district court affirmed the decision. It ruled that the administrative law judge evaluated Higgins's subjective testimony under Social Security Ruling 12-2p. It also ruled that although the administrative law judge did not explain the ten percent figure, she chose this number by viewing the evidence in a light most favorable to Higgins, and Higgins did not provide evidence that she needed to be off task more than that percentage.

## II. STANDARD OF REVIEW

We review whether the Commissioner's decision was supported by substantial evidence and whether the correct legal standards were applied. *Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1285 (11th Cir. 2025). Substantial evidence means "relevant evidence, less than a preponderance but greater than a scintilla, that a

reasonable person would accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). "We review *de novo* the legal principles applied by the Commissioner." *Id.* (citation and internal quotation marks omitted).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the administrative law judge did not err in evaluating Higgins's testimony regarding her fibromyalgia symptoms. Second, we explain that substantial evidence supported the finding that Higgins would need to be off task up to ten percent of the workday.

*A. The Administrative Law Judge Did Not Err in Evaluating Higgins's Testimony Regarding Her Fibromyalgia Symptoms.*

Higgins argues that the administrative law judge did not comply with Social Security Ruling 12-2p by discrediting her testimony regarding her fibromyalgia symptoms based on a lack of objective medical evidence. We disagree. A claimant may establish that she has a disability through her own testimony of pain or other subjective symptoms. *Id.* at 1287. The claimant must establish "evidence of an underlying medical condition" and either "objective medical evidence confirming the severity of the alleged pain arising from that condition" or "a showing that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (citation and internal quotation marks omitted). After a claimant makes this showing, the Commissioner must "evaluate the intensity and persistence" of the claimant's symptoms in the light of all available evidence. 20

C.F.R. § 404.1529(c)(1). The Commissioner must not reject a claimant's statements "solely because the available objective medical evidence does not substantiate" the statements. *Id.* § 404.1529(c)(2). The administrative law judge "must articulate specific and adequate reasons" for rejecting the claimant's complaints. *Malak*, 131 F.4th at 1287 (citation omitted).

Social Security Ruling 12-2p provides guidance on how the Social Security Administration evaluates fibromyalgia in disability claims. Social Security Ruling, SSR 12-2p; Titles II and XVI: Evaluation of Fibromyalgia, 77 Fed. Reg. 43,640-01 (July 25, 2012). When evaluating a person's statements about his or her symptoms and functional limitations, the administrative law judge must evaluate whether there are medical signs and findings that could reasonably be expected to produce the pain or other symptoms alleged and evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. *Id.* at IV. "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the administrative law judge considers all of the evidence in the record, including daily activities and treatments. *Id.*

The administrative law judge complied with Social Security Ruling 12-2p when discrediting Higgins's testimony regarding her fibromyalgia symptoms. The administrative law judge found that Higgins's impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity,

persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. *See id.*; 20 C.F.R. § 404.1529(c)(1); *Malak*, 131 F.4th at 1287. The administrative law judge then considered Higgins's subjective testimony about her pain by looking at all the evidence in the record, including the objective medical evidence and her daily activities and medical treatments, instead of relying solely on the objective medical evidence. The administrative law judge correctly applied our precedent and Social Security Ruling 12-2p.

And substantial evidence supported the determination that the evidence did not substantiate Higgins's subjective testimony regarding her fibromyalgia symptoms. The administrative law judge found the objective medical evidence did not support her assertion because Higgins did not want surgery and her MRI established that she did not need surgery; Higgins had normal motor strength, muscle bulk, tone, and gait; and doctors reported she was not uncomfortable, had no pain with range of motion, and had normal strength and sensation. Records from South Tampa Clinic recorded that Higgins did not need or want surgery. Dr. Levin repeatedly stated that Higgins appeared comfortable, had no joint pain due to range of motion, and had normal muscle strength and sensation. And Dr. Encarnacion recorded that Higgins had stable range of motion and no neurological findings. Substantial evidence supported the findings regarding the objective medical evidence.

And the administrative law judge did not rely solely on the objective medical evidence. We have recognized that fibromyalgia

"often lacks medical or laboratory signs" such that a claimant's subjective complaints may be the only means of determining the severity of her condition and limitations, and we have refused to uphold a credibility finding that relies solely on the lack of objective medical evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). But here the administrative law judge determined that other record evidence, including her daily activities and medical treatments, did not substantiate Higgins's subjective claim that her pain forced her to recline most of the day. Higgins responded to injections for her pain in 2021. And Higgins's activities included hiking at least once, sitting in church for an hour every Sunday, driving her daughter to school every day, preparing her own meals, and performing personal care. Higgins argues that the administrative law judge mischaracterized the evidence by omitting context regarding her difficulty in performing these daily activities. But this argument ignores the substantial evidence standard. We will not reweigh the evidence, "even if the proof preponderates against it," so long as the finding is supported by substantial evidence. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citation and internal quotation marks omitted).

B. *The Finding that Higgins Would Need To Be Off task Up To Ten Percent of the Workday Was Supported by Substantial Evidence.*

The administrative law judge explained, and substantial evidence supported, the finding that Higgins would be off task ten percent of the time. The administrative law judge must "state with at least some measure of clarity the grounds" for each decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)

(citation and internal quotation marks omitted). While the administrative law judge did not provide explicit calculations for the ten-percent figure, she explained her basis for that finding—because Higgins had been diagnosed with a rectocele and complained of chronic diarrhea. Substantial evidence supports this finding because Dr. Williams diagnosed Higgins with a rectocele and prolapse. While Higgins testified that she had irritable bowel syndrome and had bathroom emergencies, there was not medical support for allegations that she experienced emergencies "all day, every day." Higgins had undergone several colonoscopies, and none were able to find a cause for her diarrhea. And Higgins does not point to objective medical evidence in the record supporting more extreme limitations from her chronic diarrhea.

## IV. CONCLUSION

We **AFFIRM** the denial of Higgins's application for benefits.